IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | : | |
| | : | Case No. 1:20-cr-91 |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | **ORDER OVERRULING** |
| ALAN BORQUEZ, | : | **SENTENCING OBJECTION** |
| | : | |
| Defendant. | : | |
| | : | |

This matter is before the Court on Defendant Alan Borquez's objection to his Sentencing

Guidelines calculation.  Defendant argues that he is entitled to a two-point reduction to his

offense level under U.S.S.G. § 3B1.2 because he was a "minor participant" in the criminal

activity to which he pled guilty.  The Government opposes the reduction.  For the reasons that

follow, Defendant's objection is **OVERRULED**.

## I.     FACTS

On April 12, 2021, Defendant pled guilty to Count 1 of the Indictment, which charged

him with Narcotics Conspiracy, in violation of 21 U.S.C. §§ 846, 841(a)(1)(1), and 841(b)(1)(A).

(April 12, 2021 Docket Entry.)  Pursuant to the Statement of Facts to which he admitted, on July

27, 2020, an undercover special agent ("agent") and Individual 1 arranged for delivery of

fentanyl to the Cincinnati area.[1]  Individual 1 identified the courier as "Jose," now known to be

Borquez, and gave the agent "Jose's" contact information.  When the agent contacted "Jose,"

"Jose" said that he already sold the drugs to someone else.

---

[1] The facts cited herein are derived from the Statement of Facts attached to the Defendant's Plea Agreement.  (*See* Doc. 33.)

On August 5, 2020, the agent contacted Individual 1 again and requested Individual 1 to deliver fentanyl to Cincinnati for $55,000 a kilogram. On August 21, 2020, Individual 1 messaged the agent and said "Jose" would be transporting two kilograms of fentanyl to Cincinnati concealed in a truck. The next day, Individual 1 advised that "Jose" would be in Cincinnati on August 23, 2020 and would meet the agent on August 26, 2020. On August 25, 2020, the agent contacted "Jose" using contact information provided by Individual 1.

Drug Enforcement Agency ("DEA") agents determined that Borquez checked into a hotel in Cincinnati on August 24, 2020 using his Arizona identification and was going to check out on August 26, 2020, consistent with the timeframe of the negotiated fentanyl delivery. On August 26, 2020, the agent contacted Borquez on WhatsApp, and Borquez told the agent that he needed to go pick up the fentanyl. Borquez asked the agent for a ride. The agent declined and suggested a taxi. Surveilling agents saw Borquez leave the hotel and get in a taxi, which traveled to Georgetown, Kentucky. Agents maintained surveillance on the taxi and Borquez while Borquez traveled to Kentucky.

When he arrived in Georgetown, Kentucky, Borquez met with Individual 2 at a hotel. Borquez and Individual 2 went into the hotel. Borquez exited the hotel and traveled to another hotel in Lexington, Kentucky. Borquez sent the agent a message on WhatsApp stating that he was waiting for "them" to bring him a car that has a "hole" to put the fentanyl in for transport. A short time later, agents surveilled Borquez as he traveled to Lexington and met with Individual 3. Individual 3 provided Borquez with an Acura. Agents observed Borquez and Individual 3 look inside the trunk of the vehicle during the exchange.

Following his meeting with Individual 3, Borquez told the undercover agent he would be at the meeting location in Northern Kentucky in about an hour. Borquez alerted the agent when

2

he was about 35 minutes away from the meeting location. When en route, Kentucky State Highway Patrol stopped Borquez at the DEA's instruction. During the stop, officers used a reliable K-9 to conduct an open-air sniff of the vehicle, and the K-9 alerted to the odor of narcotics. Officers then searched the vehicle and found two kilograms of fentanyl hidden inside the trunk of the Acura. The fentanyl was found in the same location where Borquez and Individual 3 were inspecting earlier that day. The fentanyl was submitted to the Hamilton County Crime Laboratory and tested positive as 1985.8 grams of fentanyl, an amount consistent with trafficking.

## II.    LAW

Borquez objects to his Sentencing Guidelines calculation on the basis that he was denied a two-point reduction to his offense level for having a mitigating role in the criminal conduct. U.S.S.G. § 3B1.2(b) allows for a two-point decrease to the defendant's offense level for a defendant who was a "minor participant" in any criminal activity. *Id.* at § 3B1.2(b).[2] In 2015, the Application Notes to § 3B1.2 were amended to clarify the intended application of the mitigating role adjustment. Note 3(A) added language that the Guideline applies to a defendant "who plays a part in committing the offense that makes him substantially less culpable than the

---

[2] The Defendant objects only on the basis he was a "minor," as opposed to "minimal," participant. U.S.S.G. § 3B1.2, cited in full, reads:

> Based on the defendant's role in the offense, decrease the offense level as follows:
>
> **(a)** If the defendant was a minimal participant in any criminal activity, decrease by 4 levels.
> **(b)** If the defendant was a minor participant in any criminal activity, decrease by 2 levels.
>
> In cases falling between (a) and (b), decrease by 3 levels.

average participant in the criminal activity." U.S. Sentencing Guidelines Manual, suppl. to App.

C, amend. 794 at 114–18 (2015); § 3B1.2 cmt. n.3(A).[3]

In addition, Application Note 3(C) was amended to include a non-exhaustive list of

factors for the Court to consider in determining whether to apply the adjustment. U.S.

Sentencing Guidelines Manual, suppl. to App. C, amend. 794 at 114–18 (2015); § 3B1.2 cmt.

n.3(C). The five factors include:

> (i) the degree to which the defendant understood the scope and structure of the criminal activity;
> (ii) the degree to which the defendant participated in planning or organizing the criminal activity;
> (iii) the degree to which the defendant exercised decision-making authority or influenced the exercise of decision-making authority;
> (iv) the nature and extent of the defendant's participation in the commission of the criminal activity, including the acts the defendant performed and the responsibility and discretion the defendant had in performing those acts;
> (v) the degree to which the defendant stood to benefit from the criminal activity.

*Id.* Application Note 3(C) also was amended to include language that whether a defendant is

"integral" or "indispensable" to the commission of the offense is not determinative of whether

the adjustment applies:

> For example, a defendant who does not have a proprietary interest in the criminal activity and who is simply being paid to perform certain tasks should be considered for an adjustment under this guideline.
>
> The fact that a defendant performs an essential or indispensable role in the criminal activity is not determinative. Such a defendant may receive an

---

[3] The following language in Application Note 3(A) was not significantly revised by the 2015 Amendment and continues to clarify that the adjustment may apply to a drug courier:

> A defendant who is accountable under § 1B1.3 (Relevant Conduct) only for the conduct in which the defendant personally was involved and who performs a limited function in the criminal activity may receive an adjustment under this guideline. For example, a defendant who is convicted of a drug trafficking offense, whose participation in that offense was limited to transporting or storing drugs and who is accountable under § 1B1.3 only for the quantity of drugs the defendant personally transported or stored may receive an adjustment under this guideline.

*Id.*

4

adjustment under this guideline if he or she is substantially less culpable than the average participant in the criminal activity.

*Id.*

Thus, since the 2015 Amendment, in making the fact-based determination of whether the defendant was "less culpable than most other participants" and/or "substantially less culpable than the average participant," the Court should consider Application Note 3 to U.S.S.G. § 3B1.2, which provides the non-exhaustive list of factors for the Court's analysis. *United States v. Daneshvar*, 925s F.3d 766, 790–91 (6th Cir. 2019); U.S.S.G. §3B1.2 cmt. n.3(C). "The defendant, as the proponent of the downward adjustment, bears the burden of proving a mitigating role in the offense by a preponderance of the evidence." *United States v. Wilson*, 802 F. App'x 976, 981 (6th Cir. 2020) (quoting *United States v. Salgado*, 250 F.3d 438, 458 (6th Cir. 2001)).

## III.   ANALYSIS

### A. Parties' Arguments

Defendant argues he is entitled to the adjustment because he was a minor participant in the criminal activity, acting at the discretion of others in a limited role as the drug courier. The Government argues that Defendant was an indispensable party to the crime. Notably, all the cases upon which the parties rely predate the 2015 Amendment to the Application Note 3(C) of U.S.S.G. § 3B1.2, which sets forth the five non-exhaustive factors to be considered in determining whether the adjustment applies. Because the Court should consider the five factors in its analysis, these cases have limited value.

5

Defendant primarily relies upon two cases, *United States v. Vicente Fernandez*, 312 F. Supp. 2d 522 (S.D.N.Y 2004) and *United States v. Vicari*, 228 F. App'x 593 (6th Cir. 2007).[4] In *Vincente Fernandez*, the district court determined a drug courier was substantially less culpable than the average participant in a drug trafficking conspiracy. 312 F. Supp at 524. The court reasoned that the defendant did not know other participants in the crime or have any long-standing relationship or commitment to the others involved. *Id.* at 525. He had no decision-making authority within the drug trafficking operation, or in connection with the specific transaction at issue. *Id.* He was not as important to the success of the enterprise as his role was fungible. *Id.* He claimed he did not know the type or amount of the drugs, or anything about the larger trafficking operation. *Id.* In *Vicari*, the Sixth Circuit Court of Appeals found the district court did not err in finding the defendant drug courier was a minor, but not minimal, participant in criminal activity. 228 F. App'x at 598. In so finding, the district court evaluated the role played by *Vicari*, as a money courier and driver, and concluded the role was not as leader or manager of the conspiracy. *Id.* at 597–98.

The Government argues that Defendant's participation was "indispensable" to the criminal scheme, precluding the minor participant adjustment. However, "Application Note 3(c) confirms that 'perform[ing] an essential or indispensable role in the criminal activity is not determinative' and that '[s]uch a defendant may receive an adjustment under this guideline if he or she is substantially less culpable than the average participant.'" *United States v. Penny*, 777 F. App'x 142, 150 (6th Cir. 2019). In *Penny*, the Sixth Circuit Court of Appeals found the district

---

[4] In his letter to the Probation Officer, Defendant also cited *United States v. Walker*, 1 F.3d 423, 427–28 (6th Cir. 1993), which is not helpful. *Walker* predates the 2015 Amendment, and the Court found the district court did not err in finding that the defendant drug courier was not significantly less culpable than that of other couriers and refusing to reduce her offense level by two points. *Id.* at 428.

court erred in refusing to apply a two-point reduction for the defendant being a minor participant in criminal activity, vacated sentencing, and remanded the case back to the district court for consideration of the five factors under Application Note 3(C). *Id.* at 151. The district court improperly relied upon language from *United States v. Skinner*, 690 F.3d 772, 783–84 (6th Cir. 2012), which held that "[a] defendant who plays a lesser role in a criminal scheme may nonetheless fail to qualify as a minor participant if his role was indispensable or critical to the success of the scheme, or if his importance to the overall scheme was such as to justify his sentence." *Id.* at 150 (quoting *Skinner*). The district court failed to review the amendments to § 3B1.2's Application Notes, or later cases disavowing *Skinner*'s logic, and thus employed an erroneous legal standard. *Id. See also United States v. Ednie*, 707 F. App'x 366, 371–72 (6th Cir. 2017) (finding legal error requiring resentencing when a district court declined to apply the minor-role reduction because the defendant played a "vital" role in the conspiracy, employing the analysis the Commission sought to end with the Amendment).[5]

**B. Analysis of Defendant's Participation in the Criminal Activity**

Recent cases have denied the minor participant adjustment to a drug courier on the basis that the courier was not substantially less culpable than others involved. In *United States v. Wilson*, 802 F. App'x at 981, the Sixth Circuit Court of Appeals affirmed the district court's

---

[5] The Government draws support from *United States v. Sheafe*, 69 F. App'x 268, 270 (6th Cir. 2003), and *United States v. Bobo*, 2 F. App'x 401, 408 (6th Cir. 2001). *Sheafe* was relied upon heavily in *United States v. Skinner*, 690 F.3d 772 (6th Cir. 2012), the logic of which has been disavowed due to the amendments to § 3B1.2's Application Notes. *See Penny*, 777 F. App'x at 150 (disavowing *Skinner*). In *Bobo*, the Court concluded that the defendant's view of the events was "artificially narrow[,]" the defendant's involvement was not limited to the transportation of drugs or drug money, and that the defendant failed to present evidence proving mitigation so as to justify a minor participant reduction. 2 F. App'x at 408–09.

The Government also argues that the Defendant may not narrow his conduct by comparing his role to a larger conspiracy, but there is no dispute that the Defendant's role in the offense is measured in comparison to other participants in the relevant conduct (the sale of 2 kilograms of fentanyl). *See United States v. Roberts*, 223 F.3d 377, 381 (6th Cir. 2000).

decision to deny a downward adjustment for being a minor participant where the defendant had not shown that she was substantially less culpable than the average participant in a drug trafficking scheme. Emphasizing the defendant's burden, the court held: "Wilson has not explained why she was, in fact, less culpable than the average participant, nor even described the role that the average participant played." *Id.* Similarly, in *United States v. Romero*, 704 F. App'x 445, 446–47, 450 (6th Cir. 2017), the court affirmed the district court's decision denying the downward adjustment to a defendant where four of five Application Note factors weighed in favor of the defendant: he had not planned the scheme, did not understand its true scope, did not exercise decision-making authority, and received on a flat rate for his service. However, the same could be said for two others involved who accompanied the trafficker, and thus, defendant was not able to establish he was less culpable than the average participant. *Id.* at 450.

Considering the five non-exhaustive factors, Defendant's conduct does not make him "substantially less culpable than the average participant in the criminal activity." As in *Wilson*, Defendant has not met his burden in demonstrating that he was less culpable than the average participant in his criminal activity by comparing himself to others involved. Pursuant to the Statement of Facts, the following individuals were involved in the relevant criminal activity of transporting 2 kilograms of fentanyl: Individual 1, who orchestrated the drug deal; "Jose" a/k/a Borquez, the drug courier; the undercover agent posing as a buyer of fentanyl; Individual 2, who met with Borquez at a hotel in Georgetown, Kentucky; Individual 3, who Borquez met in Lexington, Kentucky and who provided Borquez with a vehicle with a "hole" in it to hold the fentanyl.

As to the first factor, Defendant had some understanding of the scope and structure of the criminal trafficking activity, as he made multiple stops, met with multiple individuals, and

8

arranged his own transportation to Georgetown, Kentucky. He also indicated in his July 2020 communication with the undercover agent that he had previously sold fentanyl, indicating his involvement in and knowledge of other drug trafficking transactions with Individual 1. He communicated that he was aware that he was transporting fentanyl as opposed to an unknown item, and the fact that he concealed his identity demonstrates some understanding of his criminal culpability. This factor, therefore, favors the Government.

Second, Defendant participated in some in the planning and organizing of the criminal activity. It is unclear whether he was involved in planning the overall fentanyl purchase. However, Defendant coordinated his own transportation to Georgetown, Kentucky by taxi and communicated directly with the agent about his arrival at a meeting spot in Northern Kentucky. Third, although not extensive discretion, Defendant indicated some judgment in coordinating his own transportation to Lexington, Kentucky as well as when he would be meeting the undercover agent in Northern Kentucky, as opposed to plans that were entirely prearranged by another person. On the other hand, as Defendant points out, he was not responsible for negotiating the amount or price of the sale of fentanyl set between Individual 1 and the agent. Overall, the second and third factors slightly favor the Defendant.

The nature and extent of Defendant's involvement in the criminal activity included communicating with the agent about the purchase and pickup of fentanyl; communicating with Individual 1 about the same; traveling from Arizona to Ohio and Kentucky for the purpose of transporting fentanyl; meeting with Individual 2 in Georgetown, Kentucky; meeting with Individual 3 in Lexington, Kentucky; obtaining a vehicle with a "hole" in it for fentanyl to be stored and verifying drugs were secured in the hiding spot; transporting the fentanyl to Northern Kentucky to meet with an agent posing as a buyer of the fentanyl.

9

Although less culpable than Individual 1, Defendant had a larger than average participation in the commission of the drug trafficking, particularly when compared to the involvement of Individuals 2 and 3, who he met with briefly. Defendant communicated with Individual 1, the agent, Individual 2, and Individual 3. He made multiple stops, changed modes of transportation, and coordinated schedules with the agent to arrange the sell. His involvement went beyond driving from one place to another. Thus, this factor favors the Government.

Lastly, as to the benefit to Defendant for his participation, Defendant argues his benefit was nominal as he stood to make $3,000 to $4,000 from the overall sale, which was for a 2-kilogram sale of fentanyl priced at $110,000 ($55,000 per kilo). Although $3,000 to $4,000 is significantly lower than the value of the sale, it is still a significant amount of money. Further, Defendant indicated that he previously sold drugs in connection with Individual 1, indicating that this may be a steady stream of income for him, with continued opportunities. This factor slightly favors the Government.

The five factors weigh slightly in the Government's favor. Defendant has not met his burden in showing his level of involvement is less culpable than the average criminal participant. Rather, his conduct is slightly more culpable, and at best comparable, to Individuals 2 and 3, although less culpable than Individual 1.[6] Further, Defendant failed to meet his burden that the adjustment applies, as he did not offer his own analysis comparing his conduct to that of the other participants involved. *See, e.g., Wilson*, 802 F. App'x at 981. Given this, Defendant is not significantly less culpable than the average participant in the relevant criminal activity. As such, the adjustment is appropriately denied.

---

[6] The Court does not think that the agent is an appropriate comparator as the agent was working in an undercover and non-criminal capacity. Neither side argued this point, and it would not affect the outcome of the Court's decision. If included as a comparator, the agent posing as a buyer was more involved in the planning and played a larger role than the Defendant. Regardless, the Defendant would still be average or above average culpability.

IV.    CONCLUSION

The Court finds that Defendant was not a "minor participant" in the criminal conduct in

this case for purposes of a downward adjustment to his offense level for his Sentencing.  Thus,

for the reasons discussed herein, Defendant's objection is **OVERRULED**.

**IT IS SO ORDERED.**

Judge Susan J. Dlott
United States District Court

11